PAULA M. YOST (SBN 156843)
IAN R. BARKER (SBN 240223)
DENTONS US LLP
One Market Plaza
Spear Tower, 24th Floor
San Francisco, CA 94105
Telephone: (415) 882-5000
Facsimile:  (415) 882-0300

Attorneys for Defendant Ceiba Legal, LLP

MICHAEL V. BRADY (SBN 146370)
MICHAEL E. VINDING (SBN 178359)
BRADY & VINDING
400 Capitol Mall, Suite 2640
Sacramento, CA 95814
Telephone:  (916) 446-3400
Facsimile:   (916) 446-7159

LITTLE FAWN BOLAND (SBN 240181)
CEIBA LEGAL, LLP
35 Madrone Park Circle
Mill Valley, CA 94941
Telephone:  (415) 684-7670 x101
Facsimile:   (415) 684-7273

Attorneys for Individual Defendants Michael
Hunter, Anthony Steele, David Brown, Adrian
John, Natalie Sedano Garcia, and Kiuya Brown

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELEM INDIAN COLONY OF POMO INDIANS OF THE SULPHUR BANK RANCHERIA, A FEDERALLY RECOGNIZED INDIAN TRIBE,<br><br>Plaintiff,<br><br>v.<br><br>CEIBA LEGAL, LLP, MICHAEL HUNTER, ANTHONY STEELE, DAVID BROWN, ADRIAN JOHN, PAUL STEWARD, NATALIE SEDANO GARCIA, KIUYA BROWN, AND DOES 1-100, INCLUSIVE,<br><br>Defendants. | CASE NO. 3:16-cv-03081-WHA<br><br>**DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO ATTORNEY FEE AWARD**<br><br>Date:      January 12, 2017<br>Time:     8:00 a.m.<br>Place:    Courtroom 8, 19th Floor<br>Before:   Hon. William H. Alsup |

1

## TABLE OF CONTENTS

2

INRODUCTION..................................................................................................................1

ARGUMENT....................................................................................................................2

I.      This Action Was Brought in Bad Faith. ...........................................................2

II.     Plaintiff Expressly Consented to this Court's Adjudication of this Suit, Including Any
        Award of Attorneys' Fees Flowing from Judgment. ..........................................3

III.    Defendants Are Entitled to Their Attorneys' Fees Defending Plaintiff's Lanham Act
        Claims...............................................................................................................6

        A.      Plaintiff's Suit Was Both Exceptionally Meritless and Brought in Bad
                Faith......................................................................................................6

        B.      Defendants Are Entitled to Attorneys Fees for Defending the Lanham Act
                Claims, and any Work Intertwined with That Defense, to the Extent Such
                Fees Are Not Covered by the Anti-SLAPP Law. ....................................7

IV.     Defendants Brought an Anti-SLAPP Motion and Are Entitled to the Associated Attorney
        Fees..................................................................................................................8

V.      Defendants' Attorneys' Fees Are Reasonable both by Rate and Number of Hours Billed. 9

VI.     Defendants' Requested Fee Multiplier of 1.5 Is Appropriate. ..........................12

VII.    The Transcript from the *Habeas Corpus* Case Is Relevant and Should Not Be Stricken.**Error! Boo**

CONCLUSION..................................................................................................................13

1

2

## <u>TABLE OF AUTHORITIES</u>

3

**Page(s)**

4

**Federal Cases**

5

*Am. Title Ins. Co. v. Lacelaw Corp.*,
   861 F.2d 224 (9th Cir. 1988) ................................................................................................ 1

6

7

*Chambers v. NASCO, Inc.*,
   501 U.S. 32 (1991) ................................................................................................................. 5

8

9

*City of Burlington v. Dague*,
   505 U.S. 557 (1992) ............................................................................................................. 12

10

*Davis v. City of San Francisco*,
   976 F.2d 1536 (9th Cir. 1992) ............................................................................................. 12

11

12

*Gracie v. Gracie*,
   217 F.3d 1060 (9th Cir. 2000) ........................................................................................ 8, 11

13

14

*Guidiville Rancheria of California v. United States*,
   No. 12-CV-1326 YGR, 2015 WL 4934408 (N.D. Cal. Aug. 18, 2015) ............................ 4, 5

15

*Kearney v. Foley & Lardner*,
   553 F. Supp. 2d 1178 (S.D. Cal. 2008) ............................................................................. 7, 9

16

17

*Kerr v. Screen Extras Guild, Inc.*,
   526 F.2d 67 (9th Cir. 1975) ........................................................................................... 12, 13

18

19

*Manufactured Home Communities, Inc. v. County of San Diego*,
   655 F.3d 1171 (9th Cir. 2011) ............................................................................................... 8

20

21

*McClendon v. United States*,
   885 F.2d 627 (9th Cir. 1989) ............................................................................................. 3, 4

22

*Metabolife Int'l., Inc. v. Wornick*,
   213 F. Supp. 2d 1220 (S.D. Cal. 2002) ................................................................................. 8

23

24

*Minichino v. First Cal Realty*,
   2012 U.S. Dist. LEXIS 177524 (N.D. Cal. 2012) ................................................................. 8

25

*Morales v. City of San Rafael*,
   96 F.3d 359 (9th Cir. 1996) ................................................................................................. 11

26

27

*Oberfelder v. City of Petaluma*,
   No. C-98-1470 MHP, 2002 WL 472308 (N.D. Cal. Jan. 29, 2002), *aff'd sub
   nom. Oberfelder v. Bertoli*, 67 F. App'x 408 (9th Cir. 2003) ............................................ 12

28

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
  134 S. Ct. 1749 (2014) ................................................................. 6

*Piping Rock Partners, Inc. v. David Lerner Assocs.*,
  Case No. 12-cv-04634-SI, 2015 U.S. Dist. LEXIS 109016
  (N.D. Cal. August 18, 2015) ..................................... 8, 10, 11

*Port of Stockton v. W. Bulk Carrier KS*,
  371 F.3d 1119 (9th Cir. 2004) ....................................... 4

*Resurrection Bay Conservation Alliance v. City of Seward*,
  640 F.3d 1087 (9th Cir. 2011) ...................................... 12

*SunEarth, Inc. v. Sun Earth Solar Power Co.*,
  839 F.3d 1179 (9th Cir. 2016) ...................................... 6

*United States v. Montagne Dev., Inc.*,
  No. 3:11-CV-01191-PK, 2014 WL 2334209 (D. Or. Mar. 10, 2014) ........... 12

*United States v. Oregon*,
  657 F.2d 1009 (9th Cir.1981) .......................................... 3

*United States v. Woodley*,
  9 F.3d 774 (9th Cir. 1993) ............................................ 5

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) ........................................ 8

*In re Vianese*,
  195 B.R. 572 (Bankr. N.D.N.Y. 1995) ................................. 4

*In re White*,
  139 F.3d 1268 (9th Cir. 1998) ..................................... 3, 4

**California Cases**

*Raining Data Corp. v. Barrenechea*,
  175 Cal. App. 4th 1363 (2009) ...................................... 11

*Robertson v. Rodriguez*,
  36 Cal.App.4th 347 (1995) ............................................ 9

**Federal Statutes**

15 U.S.C. § 1117(a) .................................................... 4

**California Statutes**

Cal. Civil Code § 47 .................................................. 9

Cal. Code Civ. Proc.

§ 245.16...................................................................................................................... 8
§ 425.16...................................................................................................................... 8
§ 425.16 (c)............................................................................................................... 4

**INTRODUCTION**

Plaintiff's Opposition to Defendants' Motion for Attorneys' Fee Award (hereinafter "Opposition") rewrites the history of this dispute and the First Amended Complaint (hereinafter "FAC"). The truth is that Plaintiff sued its political opponents, and their counsel, for exercising protected First Amendment rights in connection with a disputed tribal election. The record before this court belies Plaintiff's half-hearted assertion that it has prosecuted this retaliatory suit in good faith. On two separate occasions Plaintiff reported Defendants' counsel, Little Fawn Boland, to the State Bar of California alleging that she had engaged in unethical conduct. Both of those complaints were ultimately dismissed and, on November 3, 2016, so was the FAC, which was filled with demonstrable falsehoods.[1]

Indeed, Plaintiff's Opposition reveals an additional falsehood, asserting that Plaintiff paid only $18,531.75 in legal fees for the interpleader action (Declaration of Augustin Garcia, at 3:27 to 3:28), without any explanation of why the new figure is a tiny fraction of the $250,000 price tag for that work alleged in both of its complaints. (FAC ¶ 33; Complaint ¶ 35.) Not only is this additional factual misstatement revealing of Plaintiff's continuing bad faith, but the Court should hold Plaintiff to its signed statements before this Court. (*Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) (holding "admissions in the pleadings are generally binding on the parties" and "have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact" (citations and internal quotation marks omitted)).) Specifically, the Court may accept Plaintiff's contention that a reasonable amount of fees for Defendants to incur in this action would be the total of Plaintiff's fees for the interpleader action—$250,000 (FAC ¶ 33)— plus the fees Plaintiff allegedly incurred in this action—$35,075 (Opposition at 2 n.2)—for a total of $285,075. Thus, under Plaintiff's own reasoning the $255,367.50 in attorneys' fees and $7,668.21 in expenses Defendants incurred in this case are reasonable. Given that Plaintiff points to no factor weighing against a 1.5 multiplier, and in recognition of Defendants' counsel's winning an unequivocal victory at the risk of being unable to recover even their deeply discounted hourly

---

[1]    (*See* Order Granting Motion to Dismiss ("Order"), dated November 3, 2016.)

1   fees, the Court should award Defendants $383,051.25 in fees and $7,668.21 in costs for their

2   successful defense.

3                                   **ARGUMENT**

4   **I.       This Action Was Brought in Bad Faith.**

5              When Plaintiff urges that this action was brought "in good faith" and "not for any improper

6   purpose" (Opposition at 3:27-4:2), it is asking the Court to bless conduct which has no place in this

7   or any other court—suing its political opponents, and their counsel, in retaliation for

8   constitutionally protected conduct.  Plaintiff's goal was to silence Defendants while stripping them

9   of legal representation.

10             Plaintiff's contention that the instant dispute traces itself back to 2011 and is a legitimate

11  response to "incessant attacks on the Tribe's lawful government" (Opposition at 3:1-3:2, 3:26-

12  3:27) is false.  This case is about protected speech in the form of communications to banks and

13  government officials in February 2015 informing them that an electoral dispute existed and an

14  administrative process was under way to resolve that dispute.

15             Plaintiff's argument that its tactics are justified because it believes it will prevail in the

16  IBIA appeal (Opposition at 3:24-3:25) and that the FAC was necessary to defend against

17  "Defendants' would-be attempt to usurp control from the lawfully elected tribal council" (*Id.* at

18  14:17 to 14:18) must be rejected as nothing more than "the end justifies the means" thinking.  All

19  petitioning conduct is protected, not just that of the eventual winners, whoever they may be.  The

20  IBIA has yet to rule on the Pacific Regional Director's decision to recognize the Garcia Faction.

21  Even if the IBIA ultimately affirms the decision, that will not change the fact that Defendants were

22  engaged in lawful petitioning activity.  In short, whatever the IBIA decides, the complaint and FAC

23  in this case were filed and prosecuted in bad faith and for an improper purpose.

24             While much of the Opposition is devoted to indignation over the fees Defendants incurred,

25  the Court should not lose sight of two factors that weigh heavily in favor of the requested award.

26  First, the scope of Defendants' efforts was determined by the allegations in the FAC.  Even though

27  the gravamen of the FAC was that Defendants sent a few pieces of correspondence over a year

28  prior, the FAC itself was an error-riddled behemoth that included claims under RICO; for tortious

1  interference with contract; fraud and deceit; trademark infringement under the Lanham Act;

2  trademark infringement under California law; common law injury to business reputation; and

3  vicarious trademark infringement.  These were serious claims attacking the Brown Faction's right

4  to protect themselves in an intratribal dispute before an administrative agency and Defendants

5  could not ignore them.  Second, the Court should also remember that this case was, at the outset,

6  not only an effort to bully Defendants into silence, but also an attempt to obtain, among other

7  relief, $250,000 attorney fees that Plaintiff allegedly incurred in resolving the interpleader action

8  filed by Wells Fargo Bank.  In other words, Plaintiff empowered the Court to award attorney fees

9  when it filed the FAC.

10  **II.    Plaintiff Expressly Consented to this Court's Adjudication of this Suit,
         Including Any Award of Attorneys' Fees Flowing from Judgment.**

11

12         By filing a lawsuit against Defendants, Plaintiff necessarily and expressly consented to this

13  Court's resolution of that lawsuit, including the judgment against it and any resulting award of

14  attorneys' fees.  As the Ninth Circuit has recognized, an Indian tribe's "[i]nitiation of a lawsuit

15  necessarily establishes consent to the court's adjudication of the merits of that particular

16  controversy." (*McClendon v. United States*, 885 F.2d 627, 630 (9th Cir. 1989).)  This consent

17  "include[es] the risk of being bound by an adverse determination." (*In re White*, 139 F.3d 1268,

18  1271 (9th Cir. 1998) (citing *McClendon*, 885 F.2d at 630b and *United States v. Oregon*, 657 F.2d

19  1009, 1014 (9th Cir.1981)) (holding tribal entity that filed a claim to collect a debt in a Chapter 11

20  bankruptcy proceeding had thereby expressly waived its immunity to adverse judgment after

21  conversion of the case to Chapter 7).)

22         In short, after filing suit asking for judgment in its favor, an Indian tribe "must abide by the

23  consequences of choosing to assert a claim . . . and cannot reclaim immunity just because the case

24  took a turn that was not to its liking." (*In re White*, 139 F.3d at 1272 (citations and quotations

25  omitted).)  "Otherwise, tribal immunity might be transformed into a rule that tribes may never lose

26  a lawsuit." (*Oregon*, 657 F.2d at 1014 (holding that tribe filing claim seeking an order granting it

27  fishing rights was bound by adverse judgment).)

28         A consequence of Plaintiff's losing the lawsuit it filed is that Defendants are entitled to

attorneys' fees.  (Cal. Code Civ. Proc. § 425.16 (c) ("[A] *prevailing defendant* on a special motion to strike shall be entitled to recover his or her attorney's fees and costs." (emphasis added); 15 U.S.C. § 1117(a) (empowering court to "award reasonable attorney fees *to the prevailing party*" (emphasis added).)  Plaintiff's filing of this lawsuit thus "necessarily establishes consent to the court's adjudication of the merits of that particular controversy," including any attorneys' fees awards flowing from judgment.  (*See McClendon*, 885 F.2d at 630; *In re Vianese*, 195 B.R. 572, 575 (Bankr. N.D.N.Y. 1995) (holding tribal entity waived immunity to attorneys' fees award by filing suit because, "[i]n commencing the adversary proceeding, Plaintiff necessarily consented to the Court's jurisdiction to determine any related claims brought adversely against it" (citing *Rupp v. Omaha Indian Tribe*, 45 F.3d 1241, 1245 (8th Cir.1995)); *cf. California Valley Miwok Tribe v. California Gambling Control Comm'n*, No. D068909, 2016 WL 3448362, at *4 (Cal. Ct. App. June 16, 2016) (unpublished) ("By affirmatively choosing to make itself a plaintiff in a litigation, the Tribe expressly waived its immunity and consented to all of the normal obligations that go along with participating as a plaintiff in a litigation, . . . includ[ing] the payment of costs of suit if the lawsuit is unsuccessful.").)

Plaintiff has cited no authority holding that an Indian tribe may file suit and then escape the consequences of judgment in that suit, such as attorneys' fees authorized by law.  In seeking their attorneys' fees in this action, Defendants have not filed suit, filed a claim, or pled a counterclaim against Plaintiff.  (*See Port of Stockton v. W. Bulk Carrier KS*, 371 F.3d 1119, 1121 (9th Cir. 2004) (holding party seeking attorneys' fees under Rule 54 was only required to file a postjudgment motion and "need not, nor should it, have filed a counterclaim or a complaint at all"); *Guidiville Rancheria of California v. United States*, No. 12-CV-1326 YGR, 2015 WL 4934408, at *5 (N.D. Cal. Aug. 18, 2015) ("[T]he claim for attorneys' fees here is not a counterclaim or other affirmative claim on the treasury of the Tribe.").)  Rather, Defendants merely request the attorneys' fees that flow directly from judgment against Plaintiff *on Plaintiff's own claims*.  (*See* Fed. R. Civ. P. 54(d)(2) (providing attorneys' fees are awarded pursuant to "judgment . . . entitling the movant to the award").)  Thus, Plaintiff's authorities holding that filing a lawsuit does not waive sovereign immunity to counterclaims or separate lawsuits (Opposition at 8:19-9:22) are inapposite.  (*See In re*

-4-

1   *White*, 139 F.3d at 1272 (holding that cases regarding "whether a waiver of sovereign immunity in

2   one action with one set of parties or issues extends to a different action with different issues or

3   parties" do not affect the rule that an Indian tribe's waiver of sovereign immunity is "valid in the

4   particular proceeding in which the waiver is knowingly and expressly given").)

5           Even if Plaintiff's filing of the lawsuit was not by itself an express waiver to the

6   consequences of judgment against it, Plaintiff expressly put the particular issue of attorneys' fees at

7   issue in this suit.  (*See Guidiville Rancheria of California v. United States*, No. 12-CV-1326 YGR,

8   2015 WL 4934408, at *7 (N.D. Cal. Aug. 18, 2015) ("By asserting the claim for attorneys' fees

9   under Section 8.8 of the LDA, the Tribe took the risk that it would not prevail on its claims under

10  the agreement, and that liability for the prevailing party attorneys' fees would be the result.").)

11  Plaintiff expressly sought its "attorneys' fees and costs of suit" incurred in the lawsuit it filed (First

12  Amended Complaint at 14:18), including under the Lanham Act.  (*Id.* ¶ 61 (citing 15 U.S.C.

13  § 1117).)  Indeed, the thrust of Plaintiff's lawsuit was for, among other things, recovery of

14  "approximately $250,000 in legal fees and costs to defend" litigation underlying this suit.  (*Id.*

15  ¶ 33; *see also id.* ¶ 15.)  Thus, Plaintiff expressly empowered the Court to resolve the parties'

16  entitlement to attorneys' fees.

17          In any event, "[s]overeign immunity does not bar a court from imposing monetary sanctions

18  under an exercise of its supervisory powers."  (*United States v. Woodley*, 9 F.3d 774, 782 (9th Cir.

19  1993).)  Pursuant to these powers, "a court may assess attorney's fees when a party has acted in bad

20  faith, vexatiously, wantonly, or for oppressive reasons."  (*Chambers v. NASCO, Inc.*, 501 U.S. 32,

21  45-46 (1991) (citations and quotations omitted) (holding district court did not abuse discretion by

22  awarding the entire amount of defendant's attorneys fees totaling almost $1 million for prosecuting

23  litigation in bad faith).)  A district court may exercise this inherent power even when "that conduct

24  could also be sanctioned under the statute or the Rules."  (*Id.* at 50.)  Thus, Plaintiff's sovereign

25  immunity does not bar this Court from awarding Defendants the attorneys' fees they seek pursuant

26  to the Court's inherent power to assess attorneys' fees for litigation that Plaintiff brought and

27  prosecuted in bad faith.

28

III. **Defendants Are Entitled to Their Attorneys' Fees Defending Plaintiff's Lanham Act Claims.**

    A. **Plaintiff's Suit Was Both Exceptionally Meritless and Brought in Bad Faith.**

Defendants are entitled to their attorneys' fees under the Lanham Act if Plaintiff's claims *either* (i) were exceptionally meritless or (ii) were brought in subjective bad faith.  (*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1757 (2014); *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1180 (9th Cir. 2016) ("[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." (quoting *Octane Fitness*, 134 S. Ct. at 1756 (2014)).)  Plaintiff's claims independently trigger Lanham Act attorneys' fees based on *both* their complete lack of merit *and* Plaintiff's bad faith prosecution of them.

First, Plaintiff does not dispute Defendants' showing that Plaintiff's claims were exceptionally meritless.  (Defendants' Motion for Attorneys Fees Award ("Motion") at 7:6-8:2.)  The undisputed exceptional lack of merit is sufficient to establish entitlement to attorneys' fees under the Lanham Act.  (*SunEarth, Inc.*, 839 F.3d at 1180.)

Second, Lanham Act attorneys' fees are also appropriate for the independent reason that Plaintiff has brought and prosecuted the suit in bad faith.  Plaintiff has no answer to the evidence described in detail in Defendants' Motion (and summarized in Section I above) establishing that this suit is part of a bad faith campaign to attack the Brown Faction and its counsel's protected petitioning activity, including evidence of:

- Dismissal of Plaintiff's past meritless claims against the Brown Faction's counsel, which put Plaintiff on notice that the communications on which it sued were protected speech in connection with an ongoing administrative matter (Motion at 3:4-14);

- Misstatements in Plaintiff's Complaint that were repeated in Plaintiff's First Amended Complaint (*id.* at 3:15-25), including its now-contradicted allegation that it incurred $250,000 defending the interpleader action (FAC ¶ 35; Garcia Decl. at 3:27-3:28);

- Plaintiff's shifting arguments in opposition to Defendants' motions to dismiss that bore

1   no connection to *either* of its Complaints (Motion at 4:8-15); and

2   • Plaintiff's counsel's inconsistent and false statements at oral argument (*id.* at 4:16-6:1

3   & n. 5).

4   Instead, Plaintiff tries to rationalize this bad faith conduct by contending that, as the

5   allegedly lawful elected council, the Garcia Faction has the right to punish its political opponents

6   for asserting otherwise.  Plaintiff nowhere explains how ultimately prevailing before the IBIA

7   would retroactively sanction its filing suit targeting petitioning conduct it already knew was

8   privileged in connection with an administrative proceeding.  Indeed, the Court has already decided

9   that Defendants' petitioning conduct was not "objectively baseless" or a "sham" at the time it

10  occurred.  (Order at 3:24-4:5.)  A later order in Plaintiff's favor would in no way diminish the

11  protected status of Defendants' genuine past petitioning conduct.  Nor would a potential future

12  decision to recognize Plaintiff as the Tribe's government cure Plaintiff's demonstrably false and

13  inconsistent statements in the course of this litigation.  That the Garcia Faction acted with a sense

14  of self-righteousness in this intratribal dispute perhaps explains, but does not excuse, its heavy-

15  handed bad faith litigation tactics.

16      **B.    Defendants Are Entitled to Attorneys Fees for Defending the Lanham
               Act Claims, and any Work Intertwined with That Defense, to the
17             Extent Such Fees Are Not Covered by the Anti-SLAPP Law.**

18  The Lanham Act, along with the California anti-SLAPP law, entitles Defendants to recover

19  all attorneys' fees sought this Motion.  Prevailing on the anti-SLAPP motion entitles Defendants to

20  recovery of attorneys fees spent securing dismissal of Plaintiff's state law claims through the anti-

21  SLAPP device, as well as any work intertwined with those claims.  (*Kearney v. Foley & Lardner*,

22  553 F. Supp. 2d 1178, 1184 (S.D. Cal. 2008).)  To the extent any work on defense of the Lanham

23  Act trademark claims was not intertwined with the state law defenses—which seems unlikely,

24  given that Plaintiff pled substantively overlapping state law trademark claims, as well (*see* First

25  Amended Complaint ¶¶ 62-66, 71-74)—the fees incurred for that work is recoverable under the

26  Lanham Act.  The only legal work on Plaintiff's seven causes of action not covered by the anti-

27  SLAPP statute or the Lanham Act was drafting or research specific to Plaintiff's single civil RICO

28  claim, and Defendants do not seek recovery of those fees, which they excluded from their fee

1   calculation.  (Motion at 12:23-27.)  Defendants are not required to discount their time spent on

2   general case tasks or defenses that would have been required to defend the other six claims whether

3   or not Plaintiff pled its single RICO claim.  (*Gracie v. Gracie*, 217 F.3d 1060, 1068 (9th Cir.

4   2000); *Piping Rock Partners, Inc. v. David Lerner Assocs.*, Case No. 12-cv-04634-SI, 2015 U.S.

5   Dist. LEXIS 109016, at *13-14 (N.D. Cal. August 18, 2015) (observing that, "[g]iven the

6   substantial factual and legal overlap between" work for which fees were recoverable and other

7   work, "it would be impracticable to require plaintiffs to disaggregate the time spent" on

8   recoverable work from other work).)

9        Defendants remain amenable to submitting invoices for in camera review, which will

10   permit the Court to confirm that counsel's declarations accurately describe their time spent on this

11   litigation and are limited to tasks covered by the statutes at issue.

12   **IV.   Defendants Brought an Anti-SLAPP Motion and Are Entitled to the
            Associated Attorney Fees.**

13

14        Plaintiff suggests that in order to recover attorney fees there must be a separate motion to

15   strike under California Code of Civil Procedure section 425.16.  This exalts form over substance

16   and is not the law.  Defendants' motion to dismiss was brought under both FRCP 12(b)(6) and

17   California Code of Civil Procedure section 425.16, advancing multiple defenses applicable to both

18   procedural vehicles, including the ultimately successful *Noerr-Pennington* defense.[2]  While

19   Defendants could have filed a separately captioned motion to strike, economy favored filing a

20   single pleading as others have done.  (*See Minichino v. First Cal Realty,* 2012 U.S. Dist. LEXIS

21   177524 at *3 (N.D. Cal. 2012); *Metabolife Int'l., Inc. v. Wornick*, 213 F. Supp. 2d 1220, 1223 at n.

22   1. (S.D. Cal. 2002).)

23        The Ninth Circuit repeatedly affirmed that it follows the California Legislature's direction

24   that the anti-SLAPP statute be construed broadly.  (*Manufactured Home Communities, Inc. v.

25   County of San Diego*, 655 F.3d 1171 (9th Cir. 2011); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d

26

27   [2]       (*See* Notice of Motion and Motion of Individual Defendants to Dismiss First Amended Complaint, filed
     Aug. 24, 2016, at 1:26-2:1; *id.* at 14:14-16 ("Plaintiff's state law causes of action are also subject to a special motion

28   to strike pursuant to California Code of Civil Procedure section 425.16 . . . .").)

1097 (9th Cir. 2003); *see also* Fed. R. Civ. P. 1 (providing rules of procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding").)  Plaintiff's argument, at its essence is a contention that omission of the words "and motion to strike" from the caption of the motion to dismiss precludes an award of attorneys' fees, is simply wrong.  No case has so held and to do so would be to construe the anti-SLAPP statute narrowly rather than broadly, as the Ninth Circuit requires.

Plaintiff is also wrong when it argues that Defendants should only be awarded fees for time specifically billed to the anti-SLAPP part of the case.  That position was soundly rejected in *Kearney*, a case involving the *Noerr-Pennington* Doctrine, Civil Code section 47, and the anti-SLAPP statute.  (553 F. Supp. 2d at 1184.)  Said the court "plaintiff should not be permitted to avoid imposition of attorneys' fees for a motion to dismiss when the factual and some legal bases for the claims are inextricably intertwined as they are in the present action."  (*Id.* at 1185.)  Here, as in *Kearney,* Defendants' arguments that Plaintiff's FAC failed to state a claim based on the *Noerr-Pennington* doctrine and other principles of state law were identical to the arguments supporting striking Defendants' complaint under the anti-SLAPP statute.

Plaintiff appears to suggest that fee recovery under the anti-SLAPP statute is limited solely to fees for work on arguments that the anti-SLAPP statute applies (Opposition at 13:16-21), as opposed to the arguments that show Plaintiff's claims are subject to strike because Plaintiff unlikely to prevail.  *See* Cal. Code. Civ. Proc. § 425.16(b)(1).  Of course, the anti-SLAPP statute is intended "to compensate [defendants] for the expense of responding to a baseless lawsuit" (*Robertson v. Rodriguez*, 36 Cal.App.4th 347, 362 (1995)), not just the fees incurred showing that the case is of the sort potentially subject to anti-SLAPP.  Because the Defendants' arguments that Plaintiff failed to state a claim are identical to the arguments that supported striking Plaintiff's claims pursuant to the anti-SLAPP statute, Defendants can recover for attorneys' fees for all such work under the anti-SLAPP statute.  (*Kearney*, 553 F. Supp. 2d at 1185.)

**V.    Defendants' Attorneys' Fees Are Reasonable both by Rate and Number of Hours Billed.**

Amongst the grab bag of objections to Defendants' bills are claims that Defendants'

1   counsel block billed so that there is no way to delineate discrete tasks or portions of tasks

2   (Opposition at 2:16, 5:6-5:7, 16:19-18:12), that Defendants' attorneys efforts were duplicative

3   (Opposition at 5:20), and that the claimed fees included attempts to settle unrelated cases

4   (Opposition at 13:27).  None of these objections has a basis in fact or law.

5           Each of the Defendants' attorneys made regular detailed time entries in fractional

6   increments.  (Barker Declaration ¶ 5; Brady Declaration ¶ 4; Boland Declaration ¶ 5.)  The Court is

7   free to review the invoices in camera.  The summary categorizations in the declarations were

8   created for ease of reference and because the actual invoices were not being submitted with the

9   Motion for Attorneys' Fees.  This is permissible.  (*Piping Rock Partners, Inc.*, 2015 U.S. Dist.

10  LEXIS 109016, at *12.  ("[T]he Court must examine whether the documentation is sufficiently

11  detailed to permit the identification of compensable versus non-compensable activity.  The

12  formatting of the documentation provided—whether block billed, or otherwise—does not control

13  the Court's analysis."); *see* L.R. 54-5 (b)(2) (authorizing party seeking attorneys' fees to submit "a

14  summary of the time spent by each person" unless the court "require[s] production of an abstract of

15  or the contemporary time records for inspection").)

16          The Defendants' attorneys' efforts were not duplicative.  As noted by Plaintiff's own filing,

17  74 written pages of content was needed to demonstrate that Plaintiff's shifting and demonstrably

18  counterfactual allegations were meritless.  (Opposition at 5:4.)  Each attorney had discrete tasks to

19  contribute to the whole, and close coordination among all counsel was required given the

20  multiforum nature of this dispute.  The Court has discretion to draw its own conclusion as to the

21  requisite detail provided and is invited to review the detailed invoices of all three firms in camera,

22  as needed.  "'There is no precise rule or formula for making these determinations [regarding the

23  reasonable amount of time spent].'"  (*Piping Rock Partners, Inc.*, 2015 U.S. Dist. LEXIS 109016,

24  at *8, *citing Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983)).  "The court necessarily has

25  discretion in making this equitable judgment."  (*Id., citing Hensley,* 461 U.S. at 437)).

26          Moreover, using multiple firms is also not excessive.  "It is not inherently unreasonable to

27  employ two law firms to prosecute a single [anti-SLAPP] motion," particularly where the case is

28  complex.  (*Id.,* at *17, *citing Graham-Sult v. Clainos*, 2012 U.S. Dist. LEXIS 40201, at *4 (N.D.

1   Cal. Mar. 23, 2012) (affirming district court's holding that it was reasonable to hire two firms to

2   prosecute an anti-SLAPP motion); (*see also Raining Data Corp. v. Barrenechea*, 175 Cal. App. 4th

3   1363, 1376 (2009)).  "Furthermore, most anti-SLAPP motions tend to present complex issues."

4   (*Id.* at *16, *citing Christian Research Institute v. Alnor*, 165 Cal. App. 4th 1315, 1319 (2008)

5   ("SLAPP motions are generally difficult.")).

6          The *Piping Rock* Court upheld as not *per se* unreasonable 217 hours of legal work related to

7   a motion to strike where the matter was complex and the attorneys did not claim extensive anti-

8   SLAPP experience.  (*Id.*)  "Moreover, '[d]efining what is reasonable by reference to other cases

9   would violate the principle that 'each fee application under [the anti-SLAPP statute] must be

10  assessed on its own merits . . . taking into account what is reasonable under the circumstances.'"

11  (*Id., citing Graham-Sult*, 756 F.3d at 752 (affirming award of $240,00 for anti-SLAPP motion)

12  (*quoting Premier Med. Mgmt. Sys., Inc. v. Cal. Ins. Guarantee Ass'n*, 163 Cal. App. 4th 550

13  (2008)).  As discussed herein, this was a complex case with numerous defendants, seven disparate

14  causes of action and a Plaintiff whose narrative evolved throughout the litigation.  Thus, using

15  multiple firms who each needed to invest significant time to defend the case is not patently

16  unreasonable.

17         Lastly, as to the claim that the fees include attempts to settle unrelated cases, the settlement

18  documents, including the issues statement, statement regarding the Defendants' core values, and

19  the settlement agreement as well as each settlement discussion directly addressed this case and the

20  attorney fees associated with this case.  There is simply no practicable way to apportion the time

21  spent in settlement proceedings the Court ordered in this case, especially given the strict

22  confidentiality of such proceedings.  (*Gracie*, 217 F.3d at 1068; *Piping Rock Partners, Inc.*, 2015

23  U.S. Dist. LEXIS 109016, at *13-14.)  In any event, regardless of the existence of other disputes,

24  this Court's order that settlement proceedings occur in this case required Defendants to incur

25  attorneys' fees to comply with the order by attending mediation sessions, preparing mediation

26  statements, and preparing a proposed settlement agreement.  Recovery of the attorneys' fees

27  reasonably incurred in the court-ordered process are thus recoverable.  (*Morales v. City of San*

28  *Rafael*, 96 F.3d 359, 363 (9th Cir. 1996) (permitting recovery of "hours the prevailing party

1  reasonably expended on the litigation").)

2  **VI.   Defendants' Requested Fee Multiplier of 1.5 Is Appropriate.**

3         Defendants' Motion identified multiple factors supporting upward adjustment of the

4  "lodestar" amount for attorneys' fees.  These include the time-consuming nature of the case, the

5  difficulty of the case, the preclusion of other employment due to undertaking the case, the discount

6  Defendants' counsel offered in this matter from their customary fees, the unequivocal victory

7  Defendants obtained, and the undesirability of the case—especially given the risk that Defendants

8  might be unable to pay the fees incurred.  (Motion at 15:17-16:10; *see generally Kerr v. Screen*

9  *Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975) (listing factors).)  Significantly, Plaintiff does

10  not contend that any of the *Kerr* factors weigh against awarding the multiplier Defendants seek.

11         Instead, Plaintiff takes issue with only one of these factors, incorrectly claiming that the fact

12  a case is undesirable because counsel faces a risk that the client will be unable to pay does not

13  weigh in favor of enhancement.  (Opposition at 19:12-23.)  In support, Plaintiff cites authority that

14  holds services rendered *under a contingency fee arrangement* are not subject to enhancement on

15  that basis.  (Opposition at 19:12-23; *see Resurrection Bay Conservation Alliance v. City of Seward*,

16  640 F.3d 1087, 1095 n.5 (9th Cir. 2011) (citing *Davis v. City of San Francisco*, 976 F.2d 1536,

17  1548-49 (9th Cir. 1992)); *see Davis*, 976 F.2d at 1548-49 (holding district court should not have

18  enhanced fee award based on contingency fee arrangement (citing *City of Burlington v. Dague*, 505

19  U.S. 557 (1992)).)  These authorities are inapposite here because Defendants' counsel are not

20  operating on a contingency fee arrangement and do not seek an enhancement on that basis.  Rather,

21  an enhancement is appropriate here, among other reasons, because Defendants' counsel took on

22  this representation that was undesirable because they faced a risk of being unable to collect their

23  hourly rate.  Outside of the contingency fee context, the availability of enhancement on this basis

24  was unaffected by *Davis* and *Dague*.  (*See Oberfelder v. City of Petaluma*, No. C-98-1470 MHP,

25  2002 WL 472308, at *11 (N.D. Cal. Jan. 29, 2002), *aff'd sub nom. Oberfelder v. Bertoli*, 67 F.

26  App'x 408 (9th Cir. 2003) (granting multiplier of 1.5); *United States v. Montagne Dev., Inc.*, No.

27  3:11-CV-01191-PK, 2014 WL 2334209, at *13 (D. Or. Mar. 10, 2014) (observing that "the

28  undesirability of the case is a relevant factor that may support an upward adjustment in some

-12-

1   cases" but declining to grant enhancement "premised on the inherent risk of a contingency-fee

2   case").)  Because several of the *Kerr* factors strongly support an enhancement, and none weigh

3   against enhancement, multiplying Defendants' fees by 1.5 is appropriate.

4   **VII.    The Transcript from the Habeas Corpus Case Is Relevant and Should Not Be
            Stricken.**

5          Plaintiff seeks to bury its counsel's bad faith conduct in its campaign against the Brown

6   Faction by seeking to suppress a transcript from the related case before this Court that contains, at

7   pages 35 to 46, a discussion of this very case.  The transcript as a whole is revealing of the role this

8   case played in the Garcia Faction's scorched-earth attack against Defendants' political challenge to

9   its claim of authority, which Plaintiff perceived as "usurpation."  The transcript is thus also

10  probative of the Plaintiff and their legal counsel's disregard of the facts and the law in this broad-

11  based, bad faith campaign against the Brown Faction and its legal counsel.

12                                        **CONCLUSION**

13         For the foregoing reasons Defendants respectfully request an award of attorneys' fees in the

14  amount of $383,051.25 and $7,668.21 in expenses and costs.

15         Respectfully submitted,

16  Dated: December 21, 2016              DENTONS US LLP

17

18                                        /s/ Ian R. Barker
                                          Ian R. Barker

19                                        Attorneys for Defendant Ceiba Legal, LLP

20  Dated:  December 21, 2016             BRADY & VINDING

21

22                                        /s/ Michael V. Brady
                                          Michael V. Brady

23                                        Attorneys for Defendants Michael Hunter, Anthony
24                                        Steele, David Brown, Adrian John, Natalie Sedano
                                          Garcia, and Kiuya Brown

25

26

27

28

1    Dated:  December 21, 2016                    CEIBA LEGAL, LLP

2
                                                 /s/ Little Fawn Boland
3                                                Little Fawn Boland

4                                                Attorneys for Defendants Michael Hunter, Anthony
                                                 Steele, David Brown, Adrian John, Natalie Sedano
5                                                Garcia, and Kiuya Brown

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ATTESTATION OF E-FILED SIGNATURES**

I, Michael V. Brady, am the ECF user whose ID and password are being used to file the Defendants' Motion for Attorneys' Fee Award and Supporting Memorandum.  In compliance with Local Rule 5-1, I hereby attest that all signatories have concurred in this filing.

Dated:  December 21, 2016                    BRADY & VINDING


                                             /s/ Michael V. Brady
                                        Michael V. Brady