IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELEM INDIAN COLONY OF POMO INDIANS OF THE SULPHUR BANK RANCHERIA, a federally recognized Indian tribe,<br><br>  Plaintiff,<br><br> v.<br><br>CEIBA LEGAL, LLP, *et al.*,<br><br>  Defendants.<br>———————————————————/ | No. C 16-03081 WHA<br><br>**ORDER RE MOTION FOR ATTORNEY'S FEES** |

**INTRODUCTION**

Following dismissal of the complaint and judgment in their favor, defendants in this RICO action move for an award of attorney's fees. The motion is **GRANTED IN PART** and **DENIED IN PART**.

**STATEMENT**

Following a disputed election in the Elem Indian Colony (the "Tribe") in November 2014, both the Garcia faction and the Brown faction of the Tribe claimed to be its duly elected executive committee. In 2015, members of the Brown faction and their counsel wrote letters to banks and government agencies asking them to freeze Tribe funds until the Bureau of Indian Affairs could resolve the dispute.

According to defendants, in 2016 — while the dispute over the election was still ongoing — the Garcia faction purported to disenroll from the Tribe dozens of members sympathetic to the Brown faction. In response, certain members of the Tribe petitioned this Court for writ of habeas corpus. That related matter is pending before the undersigned.

Plaintiff in this action then sued members of the Brown faction, their counsel, and other individuals, asserting claims for (1) tortious interference with contract, (2) fraud and deceit, (3) violations of the Racketeer Influenced and Corrupt Organizations Act, (4) trademark infringement under the Lanham Act, (5) trademark infringement under California law, (6) common law injury to business reputation, and (7) vicarious trademark infringement. The gravamen of the complaint was the RICO claim and its supporting allegations that defendants corresponded with banks and agencies in furtherance of a conspiracy to take control of the Tribe (Dkt. No. 28 at 3).

Two groups of defendants moved to dismiss. A prior order granted the motions and dismissed the action, finding plaintiff's claims barred by the *Noerr-Pennington* doctrine, and denied leave to amend as futile (Dkt. No. 63). Defendants now move for attorney's fees pursuant to the Lanham Act and Section 425.16 of the California Code of Civil Procedure (California's anti-SLAPP law).

**ANALYSIS**

Before turning to the merits of the instant motion, this order first addresses plaintiff's assertion that no attorney's fees can be awarded against it because it has not waived tribal sovereign immunity to claims for such fees.

**1.    TRIBAL SOVEREIGN IMMUNITY.**

Suits against Indian tribes are barred by sovereign immunity absent a clear waiver by the tribe or congressional abrogation. *Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Okla.*, 498 U.S. 505, 509 (1991) (*Potawatomi*). A waiver of tribal sovereign immunity must be unequivocally expressed. *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978); *White v. Univ. of Cal.*, 765 F.3d 1010, 1025–26 (9th Cir. 2014). Initiation of a lawsuit necessarily establishes consent to the court's adjudication of the merits of that particular controversy, including the risk of being bound by an adverse determination. *In re White*, 139 F.3d 1268, 1271 (9th Cir. 1998) (quoting *McClendon v. United States*, 885 F.2d 627, 630 (9th Cir. 1989)).

Plaintiff cites numerous decisions for the proposition that a tribe does not waive sovereign immunity to counterclaims by bringing an action. *See, e.g.*, *Potawatomi*, 498 U.S. at 509. Thus, plaintiff argues, "although [it] did consent to a limited waiver of its sovereign

immunity by filing the instant action, it did not waive its sovereign immunity with respect to any counter-claim or claim for recoupment — in the form of an award of attorneys' fees or otherwise — made by Defendants" (Dkt. No. 75 at 10). Plaintiff's arguments are inapposite because this is a motion for attorney's fees, not a counterclaim. *See Guidiville Rancheria of Cal. v. United States*, Case No. 12–cv–1326 YGR, 2015 WL 4934408, at *5 (N.D. Cal. Aug. 18, 2015) (Judge Yvonne Gonzalez Rogers) (claim for attorney's fees was "not a counterclaim or other affirmative claim on the treasury of the Tribe"); *cf. United States v. State of Or.*, 657 F.2d 1009, 1015–16 (9th Cir. 1981) (*Oregon*) (injunction against tribe was not analogous to a "counterclaim" for sovereign immunity purposes).

Plaintiff chose to assert claims under the Lanham Act. In doing so, it committed to the practical consequences of those claims, including "the risk that its position would not be accepted, and that the Tribe itself would be bound by an order it deemed adverse." *See Oregon*, 657 F.2d at 1015; *cf. C & L Enters., Inc. v. Citizen Band Potawatomi Indian Tribe of Okla.*, 532 U.S. 411, 418–20 (2001) (tribe that contracted to arbitrate waived sovereign immunity to judicial enforcement of arbitral awards). Plaintiff cannot invoke provisions of the Lanham Act to support its claims yet avoid the legal effects of other provisions that do not work in its favor. *Cf. In re PNP Holdings Corp.*, 184 B.R. 805, 807 (B.A.P. 9th Cir. 1995) (creditor "cannot reasonably expect to invoke those portions of the bankruptcy code that allow it to recover on its claims and yet avoid the legal effect of other sections that do not work in its favor"). Nor can plaintiff bring its claims to court for adjudication and then "reclaim immunity just because the case took a turn that was not to its liking." *See In re White*, 139 F.3d at 1272.

The prevailing party's ability to seek attorney's fees under the Lanham Act's fee-shifting provision is the "inevitable consequence" of plaintiff's own conduct. By asserting its claims under the Lanham Act — including its own claim for attorney's fees thereunder — plaintiff took the risk that it would not prevail and would, as a result, be liable for the other side's attorney's fees as well. *See Guidiville*, 2015 WL 4934408, at *7. This order thus concludes that sovereign immunity does not bar an award of attorney's fees against plaintiff under the Lanham Act.

3

**2.    LANHAM ACT.**

Under the Lanham Act, courts may award reasonable attorney's fees to the prevailing party in exceptional cases. 15 U.S.C. 1117(a). An exceptional case is "one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014). Courts consider the totality of the circumstances to determine whether a case is exceptional, using a preponderance of the evidence standard and exercising equitable discretion in light of nonexclusive factors including frivolousness, motivation, objective unreasonableness, and considerations of compensation and deterrence. *Id.* at 1756 & n.6, 1758; *SunEarth, Inc. v. Sun Earth Solar Power Co., Ltd.*, 839 F.3d 1179, 1180–81 (9th Cir. 2016) (en banc). "[A] case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award." *Octane Fitness*, 134 S. Ct. at 1757.[1]

This action stands out from others due to the unreasonable manner in which it was litigated. Specifically, plaintiff's unreasonable conduct, including misrepresentations and misleading statements to the Court, makes this action exceptional. *See Octane Fitness*, 134 S. Ct. at 1756–57; *see also SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1351–52 (Fed. Cir. 2015) (discussing decisions awarding fees under the Patent Act for litigation misconduct). For example, plaintiff's counsel in this action — who also represents plaintiff in connection with the related petition for writ of habeas corpus — has acted evasively and disingenuously before the Court, including outright misstating the facts on numerous occasions during oral argument (*see* Dkt. No. 60 at 4:17–4:19). *See John v. Garcia*, No. 3:16-cv-02368-WHA (Dkt. No. 28).[2]

---

[1] Although *Octane Fitness* dealt with fee requests under the Patent Act, our court of appeals interprets the fee-shifting provisions of the Patent Act and the Lanham Act in tandem because said provisions are "parallel and identical." *SunEarth*, 839 F.3d at 1180. *Octane Fitness* therefore also governs analysis of fee applications under the Lanham Act. *Id.* at 1180–81. For the same reason, Federal Circuit decisions regarding fee requests under the Patent Act are instructive to the instant analysis.

[2] Plaintiff asserts, without explanation or authority, that the transcript in the related matter should be "stricken as irrelevant to the subject matter, unduly prejudicial, and having insufficient probative value" (Dkt. No. 75 at 19–20). This order disagrees. *See SFA Sys.*, 793 F.3d at 1352 ("[A] district court should consider a [party's] pattern of litigation where adequate evidence of an abusive pattern is presented.").

United States District Court
For the Northern District of California

This pattern of misrepresentation and disregard for factual accuracy persists even now. In its opposition, plaintiff "requests that the Court award Defendants no more than $53,600," if anything, because "This is the amount [plaintiff] paid in attorneys' fees to defend the Wells Fargo interpleader that precipitated this case, coupled with [plaintiff's] attorney fees in defending this entire case through December 8, 2016" (Dkt. No. 75 at 2). As defendants point out, however, plaintiff previously alleged it was "damaged in the sum of the approximately $250,000 in legal fees and costs to defend the interpleader action" (Dkt. No. 28 at 6). This glaring discrepancy between plaintiff's accounts of its own legal costs conveniently corresponds to its disparate interests in exaggerating damages in the complaint while downplaying liability for attorney's fees in the instant motion.

This action also stands out from others due to plaintiff's exceptionally meritless claims, which are all the more troubling in light of the possibility, given the timing of the complaint, that plaintiff brought this action to suppress political opposition. The foundation for all the asserted claims was defendants' conduct in connection with the disputed election but, as explained in the prior order dismissing this action, said conduct was exactly the sort of petitioning activity protected by the *Noerr-Pennington* doctrine (Dkt. No. 63 at 4). Plaintiff did not even come close to alleging otherwise. In its opposition to the instant motion, plaintiff claims, "Importantly, the Court did not analyze the Lanham Act claim at all in its dismissal order. It did not have to — all the claims were encompassed by *Noerr-Pennington*. The Court correctly labels this case 'a RICO action.' This was not a 'Lanham Act' case by any stretch of the imagination" (Dkt. No. 75 at 14 (citations omitted)). Yet plaintiff asserted throwaway claims under the Lanham Act anyway — further undermining its representation that its claims had merit. *See, e.g.*, *Love v. Assoc. Newspapers, Ltd.*, 611 F.3d 601, 616 (9th Cir. 2010) ("groundless and unreasonable" Lanham Act claims were "exceptional as a matter of law").

Plaintiff also seems to suggest in its opposition that this action cannot be exceptional within the meaning of the Lanham Act unless defendants show plaintiff filed this action in bad faith (Dkt. No. 75 at 14). This suggestion is rejected as contrary to the Supreme Court's holding in *Octane Fitness*. *See* 134 S. Ct. at 1757. Considering the totality of the circumstances and using a preponderance of the evidence standard, this order concludes this

5

1  action is exceptional due to both the unreasonable manner in which plaintiff litigated it and the
2  exceptionally meritless nature of plaintiff's claims. *See id.* at 1756–58. This order further
3  concludes reasonable attorney's fees should be awarded to defendants as the prevailing parties
4  under the Lanham Act's fee-shifting provision. *See* 15 U.S.C. 1117(a).

**3. CALIFORNIA'S ANTI-SLAPP LAW.**

California's anti-SLAPP law provides, "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." CAL. CIV. PROC. CODE § 425.16(b)(1). Subject to limited exceptions that do not apply here, "a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs." CIV. PROC. § 425.16(c)(1). Because the award of attorney's fees under this provision is mandatory, "the trial court must, upon defendant's motion for a fee award, rule on the merits of the SLAPP motion" even if the matter was dismissed before reaching said merits. *Pfeiffer Venice Props. v. Bernard*, 101 Cal. App. 4th 211, 215, 218–19 (2002).

The crux of this issue, however, is whether defendants actually brought a special motion to strike. Plaintiff contends defendants' motions to dismiss did not amount to a special motion to strike pursuant to California's anti-SLAPP statute (Dkt. No. 75 at 11–13). Defendants respond that "While [they] could have filed a separately captioned motion to strike, economy favored filing a single pleading as others have done," and criticize plaintiff for essentially contending "that omission of the words 'and motion to strike' from the caption of the motion to dismiss precludes an award of attorneys' fees" (Dkt. No. 79 at 8–9).

The individual defendants' motion to dismiss contained two subsections titled "California's Anti-SLAPP Statute and California Civil Code section 47" and "Code of Civil Procedure section 425.16, Civil Code section 47 and the First Amended Complaint" (Dkt. No. 32 at 14–16). These stated in relevant part, "Plaintiff's state law causes of action are also subject to a special motion to strike pursuant to California Code of Civil Procedure section 425.16 . . . . Similarly, California Civil Code section 47(b) recognizes an absolute privilege for

6

communications having 'some relation' to a legislative, judicial or other official proceeding authorized by law" (*id.* at 14–15). And, "Communications made during litigation to non-parties are immunized under section 425.16(e)(2) if they relate to the substantive issues in the litigation and are directed to persons having an interest in the litigation," and defendants' conduct in question "is also absolutely privileged under California Civil Code section 47" (*id.* at 15–16).

The problems with these two subsections go beyond mere failure to list "motion to strike" in the caption. Defendants only once mentioned that plaintiff's state law claims were "subject to a special motion to strike" and never followed up by actually requesting to strike any portions of the amended complaint. The two subsections touching on California's anti-SLAPP law simply mashed together that law and Section 47 of the California Civil Code (litigation privilege) with threadbare analysis and no attempt to explain how either provision was supposed to function here. Nothing in either subsection indicated defendants sought anything other than standard dismissal under Rule 12, albeit by throwing spaghetti at the proverbial wall.

Even now, defendants continue in their reply brief to conflate California's anti-SLAPP law with Rule 12 dismissal, claiming their "motion to dismiss was brought under both FRCP 12(b)(6) and California Code of Civil Procedure section 425.16, advancing multiple defenses applicable to both procedural vehicles" (Dkt. No. 79 at 8). This, combined with defendants' protest that requiring a separate motion to strike would "exalt form over substance," suggests that defendants believe the substantive anti-SLAPP arguments in their motion to dismiss were coherent and adequately formed, lacking only perfunctory labeling to be deemed a special motion to strike. Not so.

The distinction between a special motion to strike pursuant to California's anti-SLAPP law and a Rule 12 motion to dismiss is not merely empty formalism. In *United States ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.*, our court of appeals permitted application of California's anti-SLAPP law in federal diversity actions on the theory that the law existed "side by side" with Rules 8, 12, and 56, with "each controlling its own intended sphere of coverage without conflict." 190 F.3d 963, 972 (9th Cir. 1999). In *Makaeff v. Trump Univ., LLC*, our court of appeals elaborated that Rule 12, Rule 56, and California's anti-SLAPP law create

7

"separate and additional theor[ies] upon which certain kinds of suits may be disposed of before trial." 736 F.3d 1180, 1182 (9th Cir. 2013). Specifically (emphasis added, citation omitted):

> Rule 12 provides a mechanism to test the legal sufficiency of a complaint. The question asked by Rule 12 is whether the plaintiff has stated a claim that is plausible on its face and upon which relief can be granted. *California's anti-SLAPP statute does not attempt to answer this question*; instead, California Code of Civil Procedure § 430.10, the state statutory analog of Rule 12, does. That the California legislature enacted both an analog to Rule 12 and, additionally, an anti-SLAPP statute is strong evidence that *the provisions are intended to serve different purposes and control different spheres.*

*Ibid.* There is, moreover, a practical difference in scope between a Rule 12 motion to dismiss and a special motion to strike under California's anti-SLAPP law. The latter, while permitted in our circuit, has limited reach because federal courts can only entertain anti-SLAPP special motions to strike in connection with state law claims. *Hilton v. Hallmark Cards*, 599 F.3d 894, 901 (9th Cir. 2009). This is true even where, as here, the defendants raise First Amendment defenses common to both federal and state law claims against them. *Id.* at 900-01.

Defendants' motion to dismiss failed to assert a special motion to strike or account for procedural or practical distinctions between California's anti-SLAPP law and Rule 12. These defects do not boil down to the mere presence or absence of a caption.

Defendants point out that California's anti-SLAPP law is construed broadly (Dkt. No. 79 at 8). True, but the California Supreme Court, despite expressly acknowledging as much, nonetheless held in *S.B. Beach Props. v. Berti* that the California Legislature deliberately used a "motion to strike" approach rather than a "pleading hurdle" to make "the filing of a viable anti-SLAPP motion a necessary trigger for both an imposed judgment of dismissal and an award of fees and costs." 39 Cal. 4th 374, 381–82 (2006). Thus, in that case, the defendants could not recover attorney's fees under California's anti-SLAPP law because they never actually filed a "special motion to strike." *Ibid.* So too here.

Under these circumstances, this order declines to recast defendants' motion to dismiss under the auspices of California's anti-SLAPP law for purposes of awarding defendants attorney's fees. The cursory mentions of California's anti-SLAPP law in defendants' Rule 12

8

motion did not adequately set forth a separate special motion to strike, so defendants cannot now reap the rewards of such a motion. *See S.B. Beach*, 39 Cal. 4th at 381.

Because this order concludes defendants are not entitled to recover attorney's fees under California's anti-SLAPP law, it does not reach the question of whether plaintiff waived tribal sovereign immunity to an award of such fees.

*          *          *

In their reply brief, defendants for the first time suggest this Court should use its inherent power to award their requested attorney's fees (Dkt. No. 79 at 5). After reviewing defendants' arguments, the Court declines to allow such sandbagging. *See Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001) (whether to impose inherent power sanctions is "a determination that rests in the sound discretion of the district court"); *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 648–49 (9th Cir. 1997) (the court must explicitly find bad faith to use its inherent power to engage in fee-shifting).

## 4.     AMOUNT OF FEES.

Defendants seek $255,367.50 in attorney's fees and $7,668.21 in costs (Dkt. No. 70 at 14–16). Additionally, they seek a 1.5 multiplier of the attorney's fees "in recognition of the discounts [their] attorneys offered and financial risk they took on" (*id.* at 15–16). Including the multiplier, defendants' request is actually for $383,051.25 in attorney's fees and $7,668.21 in costs, for a total of $390,719.46.

To calculate an award of attorney's fees, a district court must first calculate the "lodestar" by "multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Caudle v. Bristow Optical Co., Inc.*, 224 F.3d 1014, 1028 (9th Cir. 2000). In determining reasonableness, a district court must consider, among other things, "the results obtained by the prevailing litigant." *Ibid.*

Here, plaintiff does not contest the unequivocally favorable results obtained by defendants or the reasonableness of defense counsel's hourly rates. Nor does it challenge the amount of costs claimed. Plaintiff does complain, however, that the number of hours spent defending this action was excessive (*see* Dkt. No. 75 at 1–2, 4–7, 18). Plaintiff misleadingly claims "three law firms" racked up the hours billed but fails to mention that it invited this

problem by suing not only defendants but also defense counsel from Ceiba Legal, LLP.  Faced with the threat of economic and professional damage, Ceiba Legal reasonably obtained its own legal representation to defend this action.  Given the circumstances of this case — including the gravity of its stakes and defense counsel's specialized knowledge of the extensive factual and procedural background leading up to this particular litigation — and following *in camera* review of defense counsel's detailed invoices (*see* Dkt. No. 80), this order concludes that both the hours and rates billed by defense counsel were reasonable.

The next question, then, is whether additional considerations warrant adjusting the lodestar.  *See Caudle*, 224 F.3d at 1028.  After considering the course of this case, including its brevity and the lack of complexity or merit in plaintiff's claims, this order concludes that the lodestar adequately compensates defense counsel for their skill, experience, and performance in defending it.  Defense counsel overreached in seeking a 1.5 fee multiplier.  No adjustment of the lodestar is warranted under these circumstances.

The unadjusted lodestar, however, does not end the inquiry here.  In light of this order's conclusion that defendants may not recover fees under California's anti-SLAPP law, the Lanham Act's fee-shifting provision governs defendants' entitlement to attorney's fees.  "[A]s a general matter, a prevailing party in a case involving Lanham Act and non-Lanham Act claims can recover attorneys' fees only for work related to the Lanham Act claims."  *Gracie v. Gracie*, 217 F.3d 1060, 1069 (9th Cir. 2000).  This order must therefore adjust the fee award to reflect apportionment between Lanham Act and non-Lanham Act claims unless "the claims are so inextricably intertwined that even an estimated adjustment would be meaningless."  *Id.* at 1070.

Defendants' voluminous detailed invoices confirmed that meaningful line-by-line apportionment of the requested fees between work related to Lanham Act claims and work related to non-Lanham Act claims is impossible.  This is unsurprising given that plaintiff's multitude of claims shared a concise nucleus of common facts, and much of the work done on this case would reasonably have been directed at the litigation as a whole.  For example, defendants raised several arguments, including their ultimately successful argument based on *Noerr-Pennington*, that proved responsive to multiple claims for relief.  Nonetheless, after evaluating the extent to which defendants' efforts could fairly be characterized as related to

plaintiff's Lanham Act claims, this order concludes that estimated apportionment is possible and apportions forty-five percent of defense counsel's reasonable attorney's fees as an appropriate award under the Lanham Act's fee-shifting provision.

## CONCLUSION

For the foregoing reasons, defendants' motion for attorney's fees is **GRANTED IN PART** and **DENIED IN PART**. Defendants are entitled to recover only their reasonable attorney's fees under the fee-shifting provision of the Lanham Act, which this order finds to be **$118,366.07**.

If any party wishes to continue litigating the amount of the fee award, then the Court will appoint a special master to further evaluate said amount. The parties will share responsibility for paying the special master's fees except that, if one party requests a special master but fails to shift the amount awarded in their favor, then that party will pay most, if not all, of the special master's fees.

By **FEBRUARY 9 AT NOON**, each side shall file a statement either unequivocally accepting the amount of the fee award — while preserving the question of entitlement to said award — or requesting appointment of a special master to further evaluate the same.

**IT IS SO ORDERED.**

Dated: February 2, 2017.

_____
WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE